UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Indemnity Insurance Corp. of DC, RRG,

        Plaintiff,

v.                                                   Civil No. 12-689 (JNE/JJG)
                                                        ORDER

AMPA, Inc.; Karissa Baukol; Travis G. Smith,

        Defendants.

Plaintiff Indemnity Insurance Corp. of DC, RRG ("IIC") brought this lawsuit against Defendants AMPA, Inc., d/b/a/ Y'All Come Back Saloon ("the Saloon"), Karissa Baukol, and Travis G. Smith (collectively referred to as "Defendants"), seeking a declaratory judgment that under Minnesota Statutes § 60A.08, subdiv. 9, IIC is entitled to rescind the insurance policy issued to the Saloon based upon material misrepresentations in the Saloon's application for insurance. Now before the Court are Defendants' Motions to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, the Court denies the motions.

## I.     BACKGROUND

The Saloon is a bar in downtown Minneapolis. IIC provided the Saloon with liability insurance for the two-year period between December 31, 2008 and December 31, 2010. On October 24, 2010, a male dancer from the Saloon struck two pedestrians with his vehicle while driving home. He was allegedly under the influence of alcohol, some of which he had consumed while performing at the Saloon. One of the injured pedestrians was Kandyce Stoffel, who died from her injuries; the other was Travis Smith. The injured pedestrians brought dram shop

1

actions against the Saloon under the Minnesota Civil Damages Act (also known as the Dram Shop Act), Minn. Stat. § 340A.801.[1]

The Saloon submitted two applications for insurance to IIC—one on December 30, 2008, and a renewal application in December 2009. The applications each contained a Warrant statement providing that any material misrepresentations or omissions "will void any issued coverages and the insurance company will have no duty to defend any claims, pay any damages, or pay sums or perform acts or services." IIC contends that the Saloon's applications contained material misrepresentations that increased IIC's risk of loss. For that reason, IIC brought this action, seeking a declaratory judgment rescinding the insurance contract and providing that IIC is not obligated to cover claims arising from the October 24th car accident.

## II.   DISCUSSION

When ruling on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept the facts alleged in the complaint as true and grant all reasonable inferences in favor of the plaintiff. *Mulvenon v. Greenwood*, 643 F.3d 653, 656 (8th Cir. 2011). Although a pleading is not required to contain detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

[1]   Stoffel is represented in this lawsuit by her sister, Defendant Karissa Baukol, who is the Trustee for the heirs and next of kin of the decedent.

Defendants argue that the Minnesota Civil Damages Act does not allow for retroactive cancellation or rescission of dram shop liability insurance policies (also referred to as liquor liability policies). Under Minnesota law, no person may sell or dispose of alcoholic beverages as part of a commercial transaction without first obtaining a liquor license. Minn. Stat. § 304A.401. In order to obtain a liquor license, the applicant must "demonstrate[] proof of financial responsibility with regard to liability." *Id.* § 304A.409, subdiv. 1(a). One way of demonstrating such proof is by procuring a liability insurance policy that provides certain minimum coverage. *Id.* § 304A.409, subdiv. (1)(a)(1).

> A liability insurance policy required by this section must provide that it may not be canceled for: (1) any cause, except for nonpayment of premium, by either the insured or the insurer unless the canceling party has first given 60 days' notice in writing to the insured of intent to cancel the policy; and (2) nonpayment of premium unless the cancelling party has first given ten days' notice in writing to the insured of intent to cancel the policy.

*Id.* § 304A.409, subdiv. 1(d). "In the event of a policy cancellation, the insurer will send notice to the issuing authority at the same time that a cancellation request is received from or a notice is sent to the insured." *Id.* § 304A.409, subdiv. 1(e).[2]

Relying entirely on § 340A.409, Defendants first argue that there is no difference between cancelling and rescinding an insurance policy, and thus under the plain language of the statute, IIC may not cancel *or* rescind the policy retroactively and without sixty days' notice. Defendants next argue that even if there is a difference between cancellation and rescission, the Court must construe the statute so as to infer that by discussing cancellation and remaining silent

---

[2] The parties point to a discrepancy between the published version of the statute and the statute as enacted by the Minnesota legislature. Apparently, subdivision 1(e) was originally numbered subdivision 1(d)(3), and separated from subdivision 1(d)(2) by a semicolon rather than a period. Because this distinction is irrelevant for purposes of this motion, the Court need not address it further.

on rescission, the Minnesota legislature intended to supersede established statutory and common law regarding contract rescission based on misrepresentation and fraud. Thus, Defendants assert that IIC is not entitled to rescind its insurance contract, regardless of any alleged misrepresentation in the insurance application, and so IIC has failed to state a claim upon which relief can be granted.

"When interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous." *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000). "A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Id.* (internal quotation marks omitted). The court "construe[s] words and phrases according to their plain and ordinary meaning" and, whenever possible, should interpret the statute "to give effect to all of its provisions." *Id.* "We are to read and construe a statute as a whole and must interpret each section in light of the surrounding sections to avoid conflicting interpretations." *Id.* "Finally, courts should construe a statute to avoid absurd results and unjust consequences." *Id.* at 278.

The plain language of § 304A.409 addresses cancellation. In contract law, cancellation and rescission are not synonymous. *See PHL Variable Ins. Co. v. Sidney Nachowitz 2007 Irrevocable Trust*, Civil No. 09-1923, 2010 WL 3893623, at *3 (D. Minn. Sept. 30, 2010) ("Rescission and cancellation have two different legal meanings.").

> Cancellation involves an ending of the agreement prior to the stated expiration date by the act of one of the parties, and is an abrogation of that part of the contract that remains unperformed. Cancellation of an insurance policy is prospective. It terminates the rights and obligations of parties in the future, but not as to losses that occurred prior to the time the cancellation becomes effective. . . . The cancellation of an insurance policy should [] be distinguished from the concept of rescission by the insurer. A rescission avoids the contract *ab initio,* while cancellation merely terminates the policy prospectively, as of the time the cancellation became effective.

17 Richard A. Lord, *Williston on Contracts* § 49:129 (4th ed. 2000). "When a policy is cancelled, it affects only the future obligations of the parties. However, when a policy is rescinded it is treated as void—as if it had never existed—and therefore neither party has any obligations to the other." 1 Jeffrey E. Thomas & Francis J. Mootz, III, *New Appleman on Insurance Law Library Edition* § 3.08[3] (2011). Thus, whereas cancellation terminates a policy prospectively, rescission is the "unmaking of a contract." *Abdallah, Inc. v. Martin*, 65 N.W.2d 641, 644 (1954). "[T]o rescind a contract is not merely to terminate it but to abrogate it and undo it from the beginning." *Id.*

Defendants urge the Court to look only at a dictionary definition of "rescind," and disregard the term's well-established meaning in the context of contract law.[3] But when construing a statute, "words and phrases are construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a special meaning . . . are construed according to such special meaning . . . ." Minn. Stat. § 645.08; *see also State v. Cannady*, 727 N.W.2d 403, 407 (Minn. 2007) ("[W]e assume that when the legislature uses a term of art . . . it intends to use the accepted definition of that term of art."); *Morissette v. United States*, 342 U.S. 246, 263 (1952) ("And where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will

---

[3]   Defendants point to one definition of "rescind," which defines it as: "To abrogate or cancel (a contract) unilaterally or by agreement." *Black's Law Dictionary* (9th ed. 2009). Another definition, however, is "[t]o make void; to repeal or annul." *Id.* Further, Black's Law Dictionary defines "rescission" as "[a] party's unilateral unmaking of a contract for a legally sufficient reason . . . or a judgment rescinding the contract; voidance" and states that rescission "restor[es] the parties to their precontractual positions." *Id.* Thus, Defendants' reliance on the dictionary is not particularly helpful.

convey to the judicial mind unless otherwise instructed."). In contract law, "cancel" and "rescind" have special meanings, and it is firmly established that cancellation and rescission are not synonymous. Section 340A.409 refers only to cancellation.

A brief examination of other related Minnesota statutes confirms this distinction. *See Am. Family Ins. Grp.*, 616 N.W.2d at 278 ("While statutory construction focuses on the language of the provision at issue, it is sometimes necessary to analyze that provision in the context of surrounding sections."). Minnesota Statutes § 60A.36 clearly distinguishes between cancellation and rescission of insurance contracts. Subdivision 1 lists permissible reasons for *cancelling* a commercial liability insurance policy. Minn. Stat. § 60A.36, subdiv. 1. Subdivision 5 provides that an insurer may *rescind* a policy if there was a "material misrepresentation, material omission, or fraud made by or with the knowledge of the insured in obtaining the insurance contract." Minn. Stat. § 60A.36, subdiv. 5. It also states that "[t]his subdivision does not limit the right to cancel the policy prospectively for the reasons stated in subdivision 1." *Id.* "Every law shall be construed, if possible, to give effect to all its provisions." Minn. Stat. § 645.16. Thus, it is evident that when the Minnesota legislature uses the word "cancel," it refers to something distinct from rescission—cancellation is a prospective termination of a contract, and by implication, rescission is not.

Further, "[a] term appearing in several places in a statutory text is generally read the same way each time it appears." *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994). There is no reason to believe that the word "cancel" in § 340A.409 should be read any differently than the word "cancel" in § 60A.36. In fact, it is apparent that the Minnesota legislature considered § 60A.36 when drafting § 340A.409. Both provisions provide for a sixty-day notice of cancellation for cancellation on bases other than nonpayment of premium, and both statutes

provide for a ten-day notice when cancellation is based on nonpayment.  The only obvious differences between the statutes are that § 340A.409 applies to cancellation by the insurer *or the insured*, and also requires that notice be provided to the licensing authority.  Further, § 340A.409 says nothing about permissible reasons for cancelling a liquor liability policy, whereas § 60A.36 enumerates eight permissible reasons for canceling a policy of insurance.  Thus, it appears that these statutes were designed to be harmonious and read together.

Section 340A.409 does not address rescission.  This silence does not render it ambiguous. *See Premier Bank v. Becker Dev., LLC*, 785 N.W. 2d 753, 760 (Minn. 2010)) ("[S]ilence in a statute regarding a particular topic does not render the statute unclear or ambiguous unless the statute is susceptible of more than one reasonable interpretation.").  Minnesota law is clear that "[i]f the legislature fails to address a particular topic, our rules of construction 'forbid adding words or meaning to a statute' that are purposely omitted or inadvertently overlooked." *Id.* (citation omitted).  The Minnesota legislature did not address rescission, and it is improper for the Court to contort the meaning of "cancel" such that it encompasses an entire area of well-established contract law regarding rescission.

It is settled law in Minnesota that "where a contract has been entered into in reliance upon representations regarding the subject-matter of the contract which are not true, the party deceived is entitled to rescission." *E. E. Atkinson & Co. v. Neisner Bros.*, 258 N.W. 151, 154 (1935); *see also Carpenter v. Vreeman*, 409 N.W.2d 258, 260-61 (Minn. Ct. App. 1987) ("A contract is voidable if a party's assent is induced by either a fraudulent or a material misrepresentation by the other party, and is an assertion on which the recipient is justified in relying." (citing Restatement of Contracts (Second) § 164(1) (1981))).  This principle is codified in two separate statutes—both of which apply to liquor liability policies.  Minnesota Statutes

§ 60A.36, subdivision 5, provides that an insurer may rescind a liability insurance policy if there was a "material misrepresentation, material omission, or fraud made by or with the knowledge of the insured in obtaining the contract." Minn. Stat. § 60A.36, subdiv. 5.  This provision applies to all commercial liability insurance policies, "except ocean marine insurance, accident and health insurance, excess insurance, surplus lines insurance, and reinsurance." Minn. Stat. § 60A.35. Thus, it applies to liquor liability policies.  *See Maytag Co. v. Comm'r of Taxation*, 17 N.W.2d 37, 40 (Minn. 1944) ("Where a statute enumerates the persons or things to be affected by its provisions, there is an implied exclusion of others.  The maxim operates conversely where the statute designates an exception, proviso, saving clause, or a negative so that the exclusion of one thing includes all others." (citations omitted)); *Anderson v. Twin City Rapid Transit Co.*, 84 N.W.2d 593, 599 (Minn. 1957) (explaining that *expressio unius est exclusio alterius* "is a well-recognized rule in the law which holds that the expression of one thing is the exclusion of another" and that "[u]nder this maxim if a statute specifies one exception to a general rule . . . other exceptions . . . are excluded").  Section 60A.08, subdivision 9, provides that "an insurer may rescind or avoid a policy if a misrepresentation on the application for insurance increases the risk of loss to the insurer or is made with intent to deceive or defraud." *Pioneer Indus., Inc. v. Hartford Fire Ins. Co.*, 639 F.3d 461 (8th Cir. 2011) (citing Minn. Stat. § 60A.08, subdiv. 9)). The Minnesota legislature explicitly provided that subsection 9 does not apply to life insurance and accident and health insurance—indicating that the statute fully applies to all other types of insurance policies, including liquor liability policies. *See Maytag*, 17 N.W.2d at 40.

  Defendants ask this Court to interpret § 340A.409 such that it *sub silentio* abrogates this long-standing statutory and common law.  They assert that because parts of the statute provide great detail—such as the subsection regarding minimum coverage requirements—the statute was

meant to be "all-inclusive." Thus, according to Defendants, anything not explicitly mentioned in the statute is not applicable law in cases involving liquor liability policies. This argument fails for several reasons.

First, dram shop liability did not exist at common law. Some—but not all—states have created a cause of action against liquor sellers.[4] Minnesota is one of the states to have done so, but because the Minnesota Civil Damages Act created a cause of action that did not exist at common law, it "must be 'strictly construed in the sense that it cannot be enlarged beyond its definite scope.'" *Urban v. Am. Legion Dep't of Minn.*, 723 N.W.2d 1, 6 (Minn. 2006) (quoting *Beck v. Groe*, 70 N.W.2d 886, 891 (Minn. 1955)); *Whitener ex rel. Miller v. Dahl*, 625 N.W.2d 827, 833 (Minn. 2001) ("As the Civil Damages Act is a creature of statute and has no common law counterpart . . . it must be strictly construed."). "[S]tatutes creating new causes of action do not abrogate the common law unless they do so 'by express wording or necessary implication.'" *Urban*, 723 N.W.2d at 5; *Shaw Acquisition Co. v. Bank of Elk River*, 639 N.W.2d 873, 877 (Minn. 2002) ("We 'presume[] that statutes are consistent with the common law, and if a statute abrogates the common law, the abrogation must be by express wording or necessary implication.'" (quoting *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000)); *Staab v. Diocese of St. Cloud*, No. A09-1335, 2012 WL 1317768, at *3 (Minn. Apr. 18, 2012) ("[W]e . . . do not presume that the Legislature intends to abrogate or modify a common law rule except to the extent expressly declared or clearly indicated in the statute."). Thus, if the Minnesota legislature intended for § 340A.409 to abrogate the common law, and supersede other liability insurance statutes, it must have done so clearly. *See Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001) ("Congress . . . does not alter the fundamental details of a regulatory scheme in vague

---

[4]  Counsel indicated at oral argument that twenty-six states have enacted such laws—the Court has not tallied up the number.

terms or ancillary provisions—it does not . . . hide elephants in mouseholes."); *Harrison ex rel. Harrison v. Harrison*, 733 N.W.2d 451, 456 (Minn. 2007) (stating that "[w]e do not believe the legislature intended to modify such a well-recognized common law rule in such an offhand manner"). The Court will not infer such a radical shift in contract law from legislative silence.

Second, the fact that the statute *is* so specific regarding other aspects of liquor liability insurance actually speaks against an inference that the legislature intended to prohibit rescission without a single word on the subject. Further, the cancellation provision in § 340A.409 was amended as recently as 2010, when the legislature amended the notice requirements and reformatted the statute. But again the legislature ignored rescission. There is no indication that the legislature ever considered or discussed rescission rights, or the lack thereof, in connection with this statute. Surely if the legislature intended to abrogate a deeply rooted principle of contract law—such as the abolition of the right to rescind a contract based on misrepresentation or fraud—there would be some evidence in the legislative history of such intent. The Court is not aware of any such evidence here.

Third, as stated above, it is clear that § 340A.409 was not intended to be "all-inclusive" such that it should be read as a stand-alone statute. Rather, it was designed to be read in conjunction with other relevant statutes, such as the general insurance statutes found in Minnesota Statutes Chapter 60A. In fact, § 340A.409 specifically cross-references general insurance statutes § 60A.07 and § 60A.206. Minn. Stat. § 340A.409, subdiv. 1(a)(1). It is likewise apparent that § 60A.36 was also meant to apply to liquor liability policies under § 340A.409. For example, the discussion of policy cancellation in § 340A.409 speaks only to

10

notification requirements, whereas § 60A.36 also addresses permissible reasons for cancellation.[5] If, as Defendants argue, § 340A.409 completely supersedes § 60A.36 when a liquor liability policy is involved, then an insurer could cancel a liquor liability policy for any reason whatsoever, since it would not be limited by the restrictions set forth in § 60A.36. This is not a reasonable reading of the law. *See* Minn. Stat. § 645.17(1) ("[T]he legislature does not intend a result that is absurd, impossible of execution, or unreasonable.").

Fourth, the Minnesota legislature knows how to address rescission rights when it intends to do so. As discussed above, Minnesota Statues § 60A.36, subdivision 5, which is entitled "Rescission," explicitly uses the words "rescind or void." Section 60A.08, subdivision 9 uses the phrase "defeat or avoid the policy." The statutes dealing with life insurance policies also clearly address rescission or voidability of insurance policies. *See, e.g.*, Minn. Stat. § 61A.03 (requiring life insurance to contain "[a] provision that, in the absence of fraud, all statements made by the insured are representations and not warranties, and that no statement *voids* the policy unless it is contained in a written application and a copy of the application is endorsed upon or attached to the policy when issued" (emphasis added)); *Id.* § 61A.60 ("For the [first two] years [] if there are wrong answers on the application and the insurer finds out about them, the insurer can *deny a claim as if the policy had never existed*." (emphasis added)); *Id.* § 61A.11 (entitled "Misstatement, When Not To Invalidate Policy"); *Id.* § 72A.207 (using the word "rescission"); *Id.* § 60A.0789 (using the word "void"). The Minnesota legislature has been equally clear in the context of accident and health insurance policies. *See, e.g.*, *id.* § 62A.04, subdiv. 2(2) ("After two years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to *void* the

---

[5]  As previously noted, after the 2010 amendments to § 340A.409, both statutes provide essentially the same notice requirements, at least with respect to timing.

policy . . . . The foregoing policy provision shall not be so construed as to affect any legal requirement for *avoidance* of a policy . . . during such initial two year period . . . ." (emphasis added)); *Id.* § 62A.615 ("No insurer may *cancel or rescind* a health insurance policy for a preexisting condition of which the application or other information provided by the insured reasonably gave the insurer notice." (emphasis added)). Minnesota's No-Fault Automobile Insurance Act, Minn. Stat. §§ 65B.41-.71, also provides that once injury occurs, "[t]he liability of the reparation obligor . . . shall become absolute" and that "such liability may not be *canceled or annulled* by any agreement between the reparation obligor and the insured after the occurrence of the injury or damage; no statement made by the insured or on the insured's behalf and no violation of said policy shall *defeat or void* said policy." *Id.* § 65B.49, subdiv. 3(3)(a) (emphasis added). There is no similar statement in § 340A.409. Thus, it is evident that the Minnesota legislature appreciates the distinction between cancellation and rescission, and clearly addresses rescission when it intends to do so.

Finally, Defendants rely heavily on public policy arguments, arguing that the purpose of the Minnesota Civil Damages Act was to make sure that individuals who have been injured by someone under the influence of alcohol are able to recover for their injuries. According to Defendants, if insurers could retroactively rescind the dram shop insurance policies, then injured parties would be unable to recover, thus frustrating the purpose of the Act and putting the public at risk. But "when the 'words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.'" *In re S.M.*, No. A10-2127, 2012 WL 1520884, at *2 (Minn. May 2, 2012) (quoting *State v. Mauer*, 741 N.W.2d 107, 111 (Minn. 2007)). The Court does not diminish the importance of the concerns raised by Defendants. But the Minnesota legislature is well aware of

such concerns, as evidenced by other statutes that account for similar public policies. For example, Minnesota's No-Fault Automobile Insurance Act prohibits rescission of an automobile insurance policy after injury has occurred. *See* Minn. Stat. § 65B.49, subdiv. 3(3)(a). In contrast, the Minnesota legislature did not incorporate the same public policy concerns when enacting or amending the Civil Damages Act. As the Minnesota Supreme Court has stated in reference to a different provision of § 340A.409, "[t]his may or may not be a legislative oversight, but it is indisputably the way the law is written," and "[w]e may not disregard the clear and unambiguous language of the statute." *Brua v. Minn. Joint Underwriting Ass'n*, 778 N.W.2d 294, 301 (Minn. 2010).

Contract law has long held that contracts that were induced by fraud or material misrepresentations are voidable. There is nothing in § 304.409 that alters that well-established principle. The statutory language is not ambiguous—it addresses only cancellation, not rescission, of liquor liability insurance policies. The Minnesota legislature understands and clearly distinguishes between these two terms, and if it wanted to abrogate the firmly-rooted statutory and common law regarding contract rescission, it could have expressly done so. Thus, if the Saloon's application for insurance contained material misrepresentations, IIC may be entitled to rescind the policy. For those reasons, Defendants' 12(b)(6) Motions to Dismiss are denied.

### III.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant AMPA's Motion to Dismiss [Docket No. 3] is DENIED.
2. Defendant Smith's Motion to Dismiss [Docket No. 7] is DENIED.

3. Defendant Baukol's Motion to Dismiss [Docket No. 12] is DENIED.

Dated: June 6, 2012

                s/ Joan N. Ericksen
                JOAN N. ERICKSEN
                United States District Judge